Ernesto Manich, Plaintiff and Appellee, v. Hortensía Quero, Defendant and Appellant.

No. 4252. Argued March 20, 1928.—Decided April 26, 1928.

*Luis Lopez de Victoria* for the appellant. *Pascasio Fajardo* for the appellee.

Mr. Justice Texidor delivered the opinion of the court.

Ernesto Manich brought an action for divorce in the District Court of Mayagüez against his wife, Hortensia Quero. Apart from the allegations of personality, marriage, offspring and property, the plaintiff alleged in substance that the defendant treated him despotically, without respecting his orders and showing for him consideration or affection; that in July of 1924 the defendant abused the plaintiff's mother, who was sick, calling her by several foul names and then applying the same names to the plaintiff; that in August of 1925 the defendant outraged the plaintiff by calling him other foul names and then seized him by the neck to choke him; that on March 11, 1926, the defendant went to the plaintiff's office where she used insulting language, slapped him and struck him with a parasol; that in November of 1925 in his home in Mayagüez the defendant insulted the plaintiff in the same way and threw at him a child's doll which caused a contusion on his right knee; that on April 22, 1926, the defendant again insulted the plaintiff in his office and bit one of his fingers; that in consequence thereof married life has become unbearable to the plaintiff who has been suffering morally due to his wife's attitude. The complaint is verified.

Hortensia Quero demurred to the complaint and the demurrer was overruled, whereupon, in a verified answer, the defendant denied that there were only two children of their marriage, inasmuch as on the date of filing the complaint she was pregnant by her husband and on July 12, 1926, the

third child of their marriage was born. She denied the allegations of cruel treatment and grave injury and set up as new matter her good behavior as a wife; that the plaintiff and the defendant had always led a happy life until the plaintiff, without justification, had abandoned the defendant, alleging on information that the plaintiff wanted to marry another woman.

At the trial both parties presented documentary evidence showing the marriage and the birth of the two children, Elena, born in January, 1923, and Josefa, born on February 18, 1925.

The oral evidence of the plaintiff consisted of his own testimony and that of Arquelio Moran, Agustín Rivera and María Rivera.

The plaintiff in his testimony confirmed the fact of the birth of the third child as his legitimate son and the complaint was understood to be so amended as to contain an allegation of that birth, although subsequently to the filing thereof. He insisted on the facts as alleged regarding the insults to his mother and to himself in July, 1924, and on the other occasions referred to in the complaint, and likewise in regard to the acts of violence mentioned. He said that he had been living apart from his wife about a year; that he went on living with her after her insults to his mother; that after the events of August, 1925, they continued living together until the occurrence on March 11, 1926, while he was in the Colectiva, when he ceased living with her; that he supports his wife and children.

Witness Arquelio Moran testified that in March and April, 1926, he was an employee of the Colectiva in Mayagüez, working as the assistant of plaintiff Manich; that on August 11, 1926, defendant Hortensia Quero, whom he knows, went to the office of the Colectiva where her husband was working and insisted on speaking with him and he refused; that she poked him with her umbrella and harassed him to make him talk to her and the husband sent the witness to call the manager of the Colectiva; that when she found that her

husband did not take notice of her she struck him on his mouth; that in March, 1926, the defendant went again to her husband's office at the Colectiva with the intention of speaking with him, and as he refused to receive her she insulted him by calling him foul names.

. Agustín Rivera testified that in 1925 and 1926 he was living in Mayagüez and knows the plaintiff and the defendant, the latter by sight; that on March 11, 1926, while the witness was at the gasoline pump, the defendant appeared in the office of Manich at the Colectiva and then the errand boy of the Colectiva came and asked the witness to let him use the telephone to ask the manager of the Colectiva to give orders to put the defendant out of the office, and the witness went to the office and saw the defendant pulling the coat of the plaintiff and calling him insulting names; that on a later occasion the defendant returned to the office of Manich accompanied by her brother and had a talk with Manich and called him names and pulled at his coat.

María Rivera testified that in 1924 she was living in Ponce at La Playa and knew the mother of the plaintiff who is a relative of the witness; that while she was sick the defendant appeared one night and insulted the invalid by calling her vile names; that the invalid died of that illness; that the invalid was deaf at that time.

In her defense the defendant offered the following oral testimony:

The defendant testified in her own defense and denied the facts alleged by her husband, saying that she had never had any quarrel with her mother-in-law, with whom she had been friendly before marrying Manich, and who never gave her any cause for quarrel. She testified that she attended her in her last illness, constantly going to see her accompanied by her husband; that she never had, while living in Ponce, any quarrel with her husband; that in August, 1925, they had a servant called Angelina López who lived and slept in the house and went out very rarely; that the witness had never

used in addressing her husband the foul names attributed to her; that in March, 1926, she went to see her husband in the office of the Colectiva because he had fallen one week behind in his allowance to her and she went to ask him for it and he gave it to her, but she did not quarrel with him; that he used her badly and told her to go away, but she did not answer him; that on November 11, 1925, the witness was living with her husband in Mayagüez and she did not insult him then or ever, nor did she call him foul names or throw a doll at him; that on April 22, 1926, she had to return to the Colectiva to ask for her allowance and her husband gave it to her, but he told her to leave at once because he was busy and sent the office boy to call the manager to put her out and this hurt the witness, but she did not quarrel with him and only told the head of the office what the matter was about; that she did not insult her husband, nor did she ever strike him; that she has not been living with her husband since November 16, when he told her that she could go to see her mother in Ponce if she so desired and sent her to the station in a taxi, bidding her good-bye very affectionately, and when she returned from Ponce the same week she found the house locked with a padlock, and did not find her husband at home nor his clothes and she searched for him in vain and finally found him in his office, called him, and he told her that he hated her and that he did not want to go on living with her, and he gave her an allowance to live on; that they have not lived together since; that when she returned from Ponce she found the lock of the door of the house broken; that she did not go to Ponce against the will of her husband who sent her in a taxi; that she has not had any quarrel with her husband or arguments with him in his office where she had gone to demand an allowance from him; that she took with her to Ponce the keys of the house as ordered by her husband, and that she remained in Ponce from Saturday until Monday of the same week.

Angelina López testified that she had worked as a servant in the house of Ernesto Manich and his wife from July 13 until October 4, 1925, in Ponce, and lived and slept in the house, and remained there during all the month of August, and she never witnessed any quarrel or disagreements between husband and wife, nor did the defendant ever insult her husband; that they got on very well.

Fermín Ríos testified that on March 11, 1926, he was working in the office of the Colectiva at Mayagüez; that in the afternoon of that day the defendant had been in the office and had talked with her husband; that on that occasion the witness was in the office and saw the couple, and that he did not witness any quarrel between them or hear the defendant insult her husband, and that he heard them talking in low tones and that "more or less they might have had an argument," not in a "quarrelsome" attitude; that there was no gathering of people there nor did Hortensia Quero strike her husband with anything; that on April 22, 1926, defendant Hortensia Quero went to the office of her husband in the Colectiva to get her back allowance, and the witness saw her when she arrived, while there and when she left, and there was no quarrel between her and her husband; that he did hear her ask Manich why he had not sent her the weekly allowance, and that he told her to go away, that he did not want to see her, and she went away; that she did not strike her husband. Replying to the plaintiff he said that the witness is not now in the employ of the Colectiva; that he had not left the job on a complaint from Manich but because he was earning little; that he had not quarreled with Manich, and that he had left because they did not increase his salary.

Ramón Guanil testified that he was a brother-in-law of the defendant and knows the spouses whom he has visited frequently in Ponce; that the spouses Manich got on very well and the last time that the witness saw them was in Ponce

in 1925; that he never witnessed any quarrel between them and that he has always treated her well.

On such allegations and evidence the District Court of Mayagüez rendered judgment on December 28, 1926, holding that the law and the facts were in favor of the plaintiff and against the defendant, and granted the divorce on the ground of cruel treatment and grave injury, ordering that the children Rosa Elena and Irma Josefa remain under the care and custody of the plaintiff. That judgment was appealed from with the acquiescence of the *fiscal* of this court who asks in his brief for a reversal of the judgment.

The defendant-appellant assigns five errors.

It is alleged in the first assignment that the court committed error in overruling the demurrer on the ground of lack of cause of action.

The appellant is mistaken in this assignment of error. A demurrer on the ground of lack of facts sufficient to state a cause of action must be based on what appears upon the face of the complaint. The demurrer must be grounded on the facts as alleged. In this case the basis of the argument of the appellant seems to be that the acts of ill treatment or injury are alleged to have been committed on five distinct occasions, with relatively long periods of time between them, and that after some of those acts the spouses had resumed their marital relations and a child had been born; hence the contention of the appellant of forgiveness of past injuries and a reconciliation. But although this may appear from the evidence introduced at the trial, it does not appear upon the face of the complaint and could not be considered by the court as a ground for the demurrer.

Later the appellant modifies the trend of her argument and alleges that it does not appear from the complaint that the acts committed by the defendant were maliciously meant to vex her husband or cause him such moral suffering as to make the marital life unbearable to him.

The sixth averment of the complaint includes the idea

that owing to the attitude of the defendant the marital life had become unbearable to the plaintiff who has been suffering morally by reason of that attitude. Perhaps that is not the best way of stating that allegation; but there are in the present case other and more important matters to be considered on which a decision may be based.

The second assignment refers to the failure of the court to consider as forgiven the injuries alleged in certain paragraphs of the fifth averment of the complaint.

It is true that the child Agustín, son of the plaintiff and defendant, was born after the date of filing the complaint.

If account be taken of the period of gestation of the human species, it is evident that 'this child Agustín was conceived about nine months before the date of its birth, and bearing in mind that the complaint was filed on May 1, 1926, the time of the conception must be found in August or September, 1925. As such conception can not occur without the required physiological act and that act can not take place without a previous reconciliation, it is evident that the reconciliation took place in August or September, 1925, and that it implies the condonation of the injuries caused prior to that date, if any. In this respect, such injuries, if proved, would not be a cause for divorce, although they could be presented in this case to corroborate causes produced subsequent to that date. Sec. 172 of the Civil Code of Porto Rico. Therefore, the facts alleged to have occurred in July, 1924, and early in August, 1925, would not be a cause for divorce.

The appellant alleges that the child Agustín was born on July 12, 1926. But no certificate from the Civil Registry was produced and the only thing we find is that averment in the answer of the defendant and the admission of the plaintiff that the child was born subsequent to the filing of the complaint.

The facts on which the court based its decision of the case can not be ascertained from the text of the judgment. But

there is no doubt that whatever the findings of the court, besides the injuries alleged to have been done in July, 1924, and early in August, 1925, there were others alleged to have been done after that date.

It may be that the most important assignment of error is that under number 3. It treats of the weighing of the cruel treatment and grave injury.

It is well to note that the judgment rendered herein by the court reads in its pertinent part as follows:

" . . . granting the divorce sought on the ground of cruel treatment and grave injury . . ."

No mention is made in the judgment that any opinion was delivered setting forth the facts shown and the legal grounds for the decision. We suppose that this was done in compliance with section 227 of the Code of Civil Procedure; but we do not find it in the record before us. Anyhow, the causes for granting the divorce were cruel treatment and grave injury, and this is what we have to bear in mind in considering this assignment of error.

The evidence of the plaintiff regarding that cause of action is deficient. In his testimony he makes statements that are not corroborated. He goes as far as to say that on one occasion the defendant tried to choke him and that on another she struck him and bit his finger, and there is nothing in the record to corroborate those statements. On the contrary the maid Angélica, who lived with the spouses in Ponce, testified that they got on well and that she never saw or heard them quarreling or insulting each other. Witness Fermín Ríos testified that on the visits paid by the defendant to her husband in his office no quarrel took place. On the other hand, the testimony of witnesses Arquelio Moran and Agustín Rivera lacks the force and certainty required to convince us as to the facts alleged. Arquelio Moran mentioned one occasion when the defendant poked the plaintiff with an umbrella and then struck him on the

mouth, but without making the statement which the plaintiff had made in his testimony regarding the acts said to have occurred in his office in the presence of Moran.

But, even if the evidence had been different and satisfactory, we think that other elements are required in justification of a divorce for cruel treatment and grave injury.

In this connection this court has made concrete and unequivocal holdings.

In *Cobos* v. *Clausel,* 19 P.R.R. 760, this court said:

"Moreover, we have decided in the cases of *Cruz* v. *Domínguez,* 8 P. R. R. 551, and *Quiñones* v. *Rodríguez,* 9 P. R. R. 291, that in order to obtain a divorce on the ground of grave injuries such injuries must reach the point of cruelty."

In *Cruz* v. *Domínguez,* 8 P.R.R. 551, this court held:

" . . . in order that insulting words may entitle the plaintiff to a divorce they must be of such a nature, or accompanied by such other acts that the situation produced will amount in itself to cruel treatment."

In *Fernández* v. *Hernández,* 8 P.R.R. 229, this court held:

"The importance of divorce requires as a cause therefor, that the insults be public and notorious, as stated by Q. Micius Scaevola, p. 421, vol. 2:

" 'A slight insult, in most cases, is the work of a moment of passion or anger. A grave insult is almost always an expression of hatred or ill-will, and the more grave and frequent the insult the greater and stronger the malevolence and the deeper the rancor.' "

In *Galip* v. *Drag,* 28 P.R.R. 767, it was sought to prove in the court below cruel treatment and grave injuries, and it was shown that the defendant on one occasion had insulted her husband and thrown stones at him. This court made a careful examination of the evidence and found that the court below had gone too far in considering the gravity of the only specific act of battery and injury, which was rather the result of a violent quarrel and did not reveal the intention of inflicting grave injury; and applying the doctrine laid

down in *Figueroa* v. *Pierluisi*, 25 P.R.R. 460; *Axtmayer* v. *Ortiz,* 19 P.R.R. 476, and *Fernández* v. *Hernández, supra,* it reversed the judgment granting the divorce.

In *Figueroa* v. *Pierluisi, supra,* the plaintiff had alleged that during a severe illness his wife abandoned him and that on complaining of her hebavior she answered him contemptuously that she could not spend her youth with a curmudgeon; that she was sorry she had married him; that she hated and despised him, and that she was disposed to break the matrimonial bond. In its opinion this court cited the case of *McDonald* v. *McDonald,* 155 Cal. 665, which contains a perfect moral and juridical theory and should be followed in deciding every divorce case. Divorce, which is an extreme remedy for a likewise extreme situation, can not be turned into an easy road of escape to evade the performance of a sacred duty and into a fountain of immorality.

In *Biaggi* v. *Gómez,* 35 P.R.R. 790, this court upheld the doctrine laid down in *Cruz* v. *Domínguez* and *Figueroa* v. *Pierluisi, supra.*

The proof of cruel treatment and grave injury must be consistent and solid; and it is not sufficient to show that occasionally and in moments of excitement the defendant may have uttered strong and offensive words, but that the accompanying acts, the circumstances in which they were uttered, their reiteration and persistence, should show that they do not spring from a passing and fleeting state of mind, but from a persistent state of mind of hatred and animosity; and likewise that the effect produced thereby should be that of real cruelty. Ordinary evidence is not sufficient to break a bond which is the foundation of a fundamental social institution. The evidence offered and heard in this case is inconsistent and weak and is not convincing as to the existence of the cause of action pleaded.

We must not forget here that the judgment in this case grants a divorce on the grounds of cruel treatment and

grave injury and not on one of them alone. We fail to find the cruel treatment among the elements of proof submitted, and as to the grave injury the evidence is deficient, as stated above.

We agree with the appellant in regard to the third assignment of error in her brief. As the fifth assignment is very similar to the third, since it deals with the undue weight given to the evidence and its sufficiency to support a decree of divorce, we shall hold likewise.

It is unnecessary to discuss the other particulars of the appeal.

The judgment appealed from must be reversed.

Justices Wolf and Aldrey dissented.